**BURNHAM et al.**
v.
**LAYTON et al.**
No. 4578.

United States Court of Appeals,
Tenth Circuit.

Dec. 26, 1953.

**238**

F. Robert Bayle and Elias Hansen, Salt Lake City, Utah, for appellants.

Arthur H. Nielson and Grover A. Giles, Salt Lake City, Utah, for appellees.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The Laytons brought this action against the Burnhams for an accounting of moneys and property received from transactions growing out of the purchase, operation and sale of a ranch in Blaine County, Idaho, known as the Cove Ranch. It was alleged that Clifton B. Layton entered into a written contract to purchase the Cove Ranch; that after an interest in the contract had been assigned to Jack B. Layton, the Burnhams advanced substantial sums of money to complete the purchase and took fee title to the ranch and personal property thereon to secure the repayments of the advances; and that the Burnhams had received income from the operation and sale of the ranch over and above that advanced and expended for its maintenance and operation. An accounting was ordered following which a judgment for $82,375.10 was entered in favor of the Laytons. The Burnhams were also directed to convey to the Laytons certain real and personal property. This appeal is from that judgment.

On July 23, 1953, an opinion was filed by this court reversing the judgment of the trial court with directions to enter judgment for the Burnhams. A petition for rehearing was granted and that opinion is hereby withdrawn.

For determination of the questions presented, it is necessary that the facts be set forth in detail. On November 22, 1946, Clifton B. Layton entered into a contract with the owners to purchase the Cove Ranch, together with water rights, Taylor Grazing Permits and shares of stock in the Sawtooth Grazing District. The purchase price was $70,000. It was payable $20,000 on or before January 1, 1947, and $50,000 within one year from January 21, 1947, with interest thereon from and after August 1, 1946. Edsell Christensen and Ray Rosebraugh represented the owners of the ranch and held an option to purchase the same. In connection with the execution of the contract, Clifton B. Layton and his wife gave Christensen and Rosebraugh their promissory note for $10,000, secured by a mortgage on the ranch. Clifton B. Layton was without sufficient funds to make the initial payment on the contract. The Burnhams advanced $17,000 for this purpose. When the balance of the purchase price became due, Layton was unable to raise the money and the Burnhams advanced an additional $46,102.25 and took title to the property in their name. At this time the total advances amounted to $71,655. Prior to the acquisition of the title to the ranch by the Burnhams, Clifton Layton had assigned the contract of purchase to his.

son, Jack B. Layton and his wife. This assignment allegedly was made to strengthen the son's credit at the bank and to defeat the Christensen and Rosebraugh mortgage.

After the Burnhams had acquired the ranch, they gave Jack Layton and his wife a contract, dated January 1, 1948. In substance, the contract provided that any time within six months after the Burnhams had acquired the ranch, they would make, execute and deliver a contract of sale of it to Jack Layton and his wife. It provided that the conditions set out in the contract of January 1, 1948, should be incorporated in the purchase contract; that the purchase price of the property should be $71,655, one-half thereof payable within one year and the balance within two years, together with interest. It provided that upon proper execution of deeds from the owners of the Cove Ranch to the Burnhams, they should take immediate possession, control and management of the ranch, provided however that Jack Layton should remain on the ranch and operate it under the direction and supervision of the Burnhams. The contract contained other provisions with respect to what should be included in the contract of purchase, should one be executed.

Jack Layton took possession of the ranch and operated it under the contract. The second contract contemplated by this agreement was never entered into.

Early in 1948, the ranch property was listed for sale with a real estate broker who produced three Randall brothers as prospective purchasers. In April of that year, Clifton B. Layton negotiated with the Randall brothers, and a price of $150,000 for the ranch, livestock and equipment was discussed. The Burnhams continued these negotiations. A contract was executed whereby the Randalls agreed to pay $140,000 for the ranch, livestock and equipment, $70,000 of which was to be paid within two years, and the balance in six equal annual installments. It was agreed that to secure the $70,000 payment, each of the Randall brothers would execute a promissory note in the sum of $25,000, secured by real estate mortgages. Clifton Layton objected to the taking of the three notes and mortgages for the down payment, and he testified that the Burnhams said that they would treat the notes as a cash item.

In June of 1947, the Laytons vacated the ranch and the Randalls took possession. One of the Randalls was unable to furnish the mortgage contemplated by the contract and some of the cattle were taken back by the Burnhams in lieu of this mortgage. It soon became apparent that the Randalls would be unable to perform the conditions of the contract and in March of 1949, they expressed a desire to cancel the contract and return the property. The Burnhams and the Laytons were dissatisfied with the operation of the ranch by the Randalls and were desirous of withdrawing from the transaction and obtaining possession of the property. After a conference between the Burnhams and the Laytons, both parties authorized their attorney to cancel the contract and settle the matter entirely upon the payment of $10,000 cash or security approved by one of the Burnhams, together with the settlement of a claim of a real estate broker and the replacement of all personal property which had been removed from the ranch. This settlement was to include a cancellation of the obligations created by the three $25,000 notes. The settlement made by the attorney was for the surrender of possession of the ranch and a note for $6,000, payable within one year. The Laytons made some complaint about the settlement but apparently accepted it. The $6,000 was paid at a later date. During the time that the Randall matter was being settled, another sale, known as the Baird Transaction, was negotiated. A contract was entered into wherein the Burnhams agreed to sell the ranch to Baird and associates for $100,000, of which $5,000 was received in cash. Jack Layton was present when the Baird contract was executed and later met with the Burnhams and received $3,299 of the $5,000 payment.

In the meantime, a suit was brought in the State Court of Blaine County, Idaho, to foreclose the Christensen and Rosebraugh mortgage. The Laytons and the Burnhams were all made defendants in this action and they joined in the defense.

In separate answers, filed March 21, 1949, the Laytons alleged that the Burnhams acquired the ranch by purchase and that they were then the owners in fee of the property. The Idaho court found that the mortgage created a lien upon the ranch property, subject to the claim of the Burnhams, and ordered the property sold under foreclosure. The Burnhams were the purchasers at the foreclosure sale for approximately $80,-000. The Laytons then negotiated a sale of the property to Albert E. Reid and his wife for a consideration of $100,000. The Burnhams received $81,085.74 of the purchase price and the Laytons, $12,275.-40. The Laytons quitclaimed all of their interest in the property to the Reids, and the Burnhams agreed to convey a sufficient certificate of redemption covering the ranch and appurtenances. Of the original ranch property, the Burnhams still held title to 160 acres of land and 100 shares of stock in the Sawtooth Grazing District which was not included in the mortgage foreclosure.

Upon these facts the trial court held that the advances to the Laytons were loans and that the Burnhams took title to property, including livestock and other personal property, as security for the repayment of these loans. It concluded that throughout all of the transactions. the Laytons were the equitable owners. of the ranch properties, and that the Burnhams should be required to account. to them for all funds which they received over and above the advances which they had made to the Laytons and expenditures in connection with the maintenance and preservation of the property. In the accounting it was held that the Burnhams accepted the three $25,000 notes from the Randalls as cash and in full payment of all amounts then owing to them by the Laytons and that all rights of the Burnhams in the property ceased at the time of the execution of the Randall contract. The Burnhams. were required to account for all money received by them after the execution of the Randall contract in May, 1948. The court allowed certain expenditures and. payments made to the Laytons and for their use and benefit after the Randall transaction.[1] From the evidence and.

1. Findings No. 8, 9 and 10 read:

"8. Notwithstanding the cancellation of the indebtedness owing by Plaintiffs to Defendants by the acceptance of the notes and mortgages referred to in the preceding Paragraph, Defendants thereafter exercised control over said Cove Ranch to the exclusion of Plaintiffs. However, Defendants' right to said property ceased at the time of the execution of said contract of sale with the Randalls. In connection with subsequent transactions, Defendants received from said ranch properties various sums of money which belonged to the Plaintiffs, and for which they must account, to-wit:

| "Date | Source | Amount |
|---|---|---|
| "August 6, 1948 | From sale of horses in 1948 | $ 266.60 |
| "April 6, 1949 | James A. Baird (down-payment on purchase of ranch) | 5,000.00 |
| "October 31, 1949 | From sale of crops produced in 1949 | 3,874.86 |
| "September 12, 1950 | From Albert E. Reid and others on final sale | 81,085.74 |
| | "Total | $89,227.20 |

"In addition to the foregoing items of cash, Defendants have retained and now retain as trustee for the Plaintiffs 160 acres of land, including water rights, forming a part of the ranch properties, 100 shares of stock in the Sawtooth Grazing District and Abstracts of Title covering all of said ranch properties.

from their conduct, it appears to us to be conclusive that from the time the Burnhams took title to the property until the final disposition to the Reids, they recognized and understood that the Laytons had rights which could be exercised by paying to them the amounts which they had advanced and paid out for the operation and maintenance of the ranch. It was equally conclusive that, before and after the Randall sale, the Laytons recognized and understood that their rights were subject to the payment of the Burnham claims. Up to the final sale to the Reids, they made no contention to the contrary.

It is quite clear that throughout all of this period the Burnhams were attempting to be made whole for their advances and expenditures, and that the Laytons were attempting to salvage something over and above the Burnham claim. It is difficult to determine whether the rights of the Laytons are those of an ordinary mortgagor, or whether their rights lie in an agreement to purchase the property for the amount of the Burnham advances. The latter was the purpose of the contract between the Burnhams and Jack Layton after the Burnhams took title to the property. The second contract contemplated by the Jack Layton agreement was never executed. This may be accounted for from the fact that the sale was made to the Randalls before the expiration of the six-months' period. In any event, it appears to us that the conduct of the parties is such as to clearly establish that the Burnhams were to be repaid all of their advances and expenditures necessarily made for the operation, maintenance and preservation of the ranch property, and that upon sale of the property the Laytons were entitled to any balance. Regardless of the theory upon which these

"9. Subsequent to the sale of said ranch properties to the Randalls, Defendants expended certain moneys in connection with said ranch for the use and benefit of the Plaintiffs, for which they are entitled to receive reimbursement, as follows:

| "Date | Nature of Expenditure | Amount |
|---|---|---|
| "August 9, 1948 | One-half of taxes for 1946 and all of taxes for 1947 | $ 3,061.89 |
| "December 12, 1948 | Kraft Cheese Company (balance owing on certain cattle) | 1,469.30 |
| "August 8, 1949 | H.P.H. Agency (grain insurance for crops produced in 1949) | 45.00 |
| "May 19, 1951 | Amount owing as real estate commission on sale of ranch properties to Randalls | 6,000.00 |
| | "Total | $10,576.19 |

"10. In addition to the foregoing expenditures made on behalf of Defendants, Plaintiffs have heretofore made certain cash payments to the Defendants for which they should receive credit against the amounts owing by them, as follows:

| "Date | To Whom Paid | Amount |
|---|---|---|
| "May 20, 1948 | Clifton B. Layton | $ 250.00 |
| "June 26, 1948 | Clifton B. Layton | 100.00 |
| "November 1, 1948 | Clifton B. Layton | 1,115.68 |
| "March 3, 1949 | Clifton B. Layton | 25.00 |
| "April 12, 1949 | Jack B. Layton | 3,299.25 |
| | "Total | $ 4,789.93 |

"All other items expended by Defendants subsequent to the sale of the ranch properties to the Randall Brothers were made voluntarily and for the personal benefit of Defendants and not for the protection or preservation of said ranch properties for the Plaintiffs. Said items are therefore disapproved and not allowed as charges or offsets against the amount owing to Plaintiffs."

rights are based, we think that in a court of equity the same result would be reached in this kind of a case. We therefore hold that the Burnhams are entitled to receive all advances and all expenditures necessarily made by them to operate and preserve the property, together with interest thereon from the date of each advance or expenditure. If there is a balance, either in money or property, it belongs to the Laytons.

■■ We then reach the accounting. We think the court's conclusion that the acceptance of the three $25,000 notes by the Burnhams from the Randalls to secure the down payment of the contract of purchase was the same as cash, and constituted payment of the Burnham claim in full, is clearly erroneous. The initial payment of $70,000 on that contract was not paid, and the security taken was returned when the contract was cancelled with the consent and authority of all the parties and for their mutual benefit. The settlement was not made in accordance with the authorization, but the Laytons with full knowledge of the facts failed to repudiate it, acted upon it, and accepted its benefits. This amounts to a ratification. 2 Am.Jur.Agency, Sec. 209; Doner v. Honstead, 61 Idaho 669, 106 P.2d 868; Annotation 87 A.L.R. 794; 48 A.L.R. 925. At no time after the Randall settlement did the Laytons claim that the Burnhams had no further interest in the property. They did not object to the Baird sale. Almost a year later they alleged in their answers filed in the Christensen and Rosebraugh litigation that the Burnhams were the owners in fee of the mortgaged property. The Idaho court found that the Burnhams had a lien on the real property sold in foreclosure. During all of this time the Burnhams, without objection from the Laytons, retained possession, management and control of the property.

The trial court disallowed all items of expenditure by the Burnhams which were made after the Randall transaction except those items listed in findings 9 and 10. The Burnhams claimed expendi-

2. These items are listed as follows:

**Miscellaneous**

| Date | Nature of Expenditure | Amount |
|---|---|---|
| 2-18-48 | Franklin Serum Company (Branding Oil and Copper Brand) | $ 8.00 |
| 11-15-48 | Carl Randall—trucking cattle | 40.00 |
| 1-20-49 | Carl Randall—trucking cattle | 40.00 |
| 1-20-49 | Nek Stelma—hauling cattle | 20.00 |
| 12- 5-49 | Paul Potter—accounting services | 25.00 |
| 6- 2-50 | Blain County Sheriff—fee | 136.20 |
| 9- 1-50 | Lincoln Kelly Company—auditing service | 150.00 |
| 6- 7-50 | Alfalfa Seed and Planting in 1950 | 1,300.00 |
| 4-20-50 | C. A. Gardner, Treasurer | |
| 4- 1-50 | Water Assessment for 1950; | 1,634.22 |
| | Dorothy Povey, Additional | 293.22 |
| 6- 6-50 | Dorothy Povey, Treasurer, Taxes for ½ of the year 1948 and all of 1949 on Cove Ranch | 2,514.75 |
| 3- 6-50 | Mabel Beveridge—copy of deeds for use in Abegglen trial | 11.75 |
| 6- 6-50 | Ernest L. Gomes, Sawtooth Grazing Assessments for 1950 | 50.00 |
| 8- 5-50 | C. W. Gardner—witness fee—Stewart trial Legal | 5.00 |

**(J. D. Skeen)          Legal**

| Date | Nature of Expenditure | Amount |
|---|---|---|
| 8-26-48 | Paid to J. D. Skeen "as expense Money" | 200.00 |
| 10- 4-48 | Paid to J. D. Skeen "as expense Money" | 200.00 |
| 12-16-48 | Paid to J. D. Skeen "as expense Money" | 125.00 |
| 11-28-49 | Paid to J. D. Skeen "as expense Money" | 34.42 |
| 7-20-49 | Paid to J. D. Skeen as expense money for Abegglen matter | 100.00 |
| 2-24-50 | Paid to J. D. Skeen as expense money for Abegglen matter | 70.00 |
| 6- 9-50 | Paid to J. D. Skeen as expense money for Abegglen matter | 83.87 |

tures totaling $23,304.76,[2] most of which were disallowed upon the ground that they were made after the Randall sale and were "for the personal benefit of defendants and not for the protection or preservation of said ranch properties for the plaintiffs". Under our view of the case these were proper expenditures made in the operation of and for the preservation of the properties. They were made with the knowledge and consent of the parties and for their benefit and should be allowed, except for the expenditures of Robert O. Burnham, which appear to be expenses in connection with the receipt of the redemption money after the Reid sale and which have no relation to the properties. Other items claimed by the Burnhams and disallowed by the court were for personal travel,

### Miscellaneous

| Date | Nature of Expenditure | Amount |
|---|---|---|
| 7–26–50 | Paid to J. D. Skeen as expense money for Abegglen matter | 5.00 |
| 11–29–50 | Paid to J. D. Skeen as expense money for Abegglen matter | 49.30 |
| 8–17–50 | Court Costs sued against surety company | 13.20 |
| 4–12–49 | Legal Services | 1,000.00 |
| 4– 4–50 | Legal Services | 2,000.00 |
| 9–19–50 | Legal Services | 3,000.00 |
| 2–14–51 | Legal Services (Re: Abegglen Appeal) | 250.00 |
| 2–28–51 | Legal Services (Re: Abegglen Appeal) | 250.00 |

| Date | Legal | Amount |
|---|---|---|
| 6–21–49 | Services at Stewart trial | 100.00 |
| 8–10–49 | Expenses such as telephone | 7.50 |
| 4–20–50 | Two days services at Cove Ranch | 60.00 |
| 5– 4–50 | Legal Services—Cove Ranch | 8.94 |
| 6–27–50 | Services for Cove Ranch | 82.33 |
| 9–19–50 | Services to Clifton B. Layton on Cove Ranch and other matters | 1,580.00 |
| 10–10–50 | Services and telephone expense (Re: Payment of redemption money) | 153.69 |
| 12–26–50 | Telephone, telegraph expenses | 7.50 |

(L. L. Sullivan)

| | | |
|---|---|---|
| 3– 6–50 | Legal Services | 25.00 |
| 6–24–49 | Legal Services (Re: Appearance in Abegglen matter) | 50.00 |

(Oscar Worthwine)

| | | |
|---|---|---|
| 2–10–50 | Services in Abegglen trial at Boise | 321.50 |
| 9–25–50 | Legal fee (Re: Abegglen trial) | 25.00 |

(Joseph McFadden)

| | | |
|---|---|---|
| 11–23–51 | Legal Advice (Retainer) | 25.00 |

### Miscellaneous Legal Items Re: Abegglen vs. Burnham

| | | |
|---|---|---|
| 11–28–49 | Selbach Insurance Agency, bond | 10.00 |
| 11–28–49 | E. M. Garnett—Reporting Deposition | 26.15 |
| 3–28–50 | G. C. Vaughan—transcript on appeal | 77.85 |
| 9– 5–50 | Paul P. O'Brien—Appeal Costs $600 less $197.76 refund | 402.24 |
| 1– 5–51 | Selbach Insurance Agency—Appellate Bond | 70.00 |
| 5–19–51 | Payment of Abegglen Judgment (Checks No's 12 and 14 | 6,452.20 |

### Robert O. Burnham

| | | |
|---|---|---|
| 3– 7–50 | Expense—trip to Boise | 66.03 |
| 9–15–50 | Expenses to Boise to receive Redemption money | 32.00 |
| 9–20–50 | Hotel & Meals to Boise to receive Redem. Money | 32.00 |
| 9–22–50 | Expenses to Hailey (Re: Redemption—Sept. 2) | 34.00 |
| 9–11–50 | United Airlines (Plane fare) two to Boise to receive redemption money | 78.90 |
| | Total | $23,304.76 |

hotel expenses and per diem, and totaled $2,790.70.[3] We are unable to ascertain from the record what these expenditures were for. If they were expenditures necessary for the operation and maintenance of the ranch properties they should have been allowed. These items are returned for further consideration and findings by the trial court.

Prior to the trial, the Burnhams sought to have Albert E. Reid and his wife made involuntary plaintiffs in the action. It was alleged that they were indispensable parties to a complete disposition of the case. There is no merit in this contention. Rule 19 of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that persons having a joint interest shall be made parties and joined, either as plaintiffs or defendants. The Reids had no interest in this accounting action and they are not indispensable, or even necessary parties, to a full determination of the rights of the parties hereto. A final judgment herein will not in any manner injure the rights of the Reids. The court did not err in refusing to make them parties. Dunham v. Robertson, 10 Cir., 198 F.2d 316; Choctaw and Chickasaw Nations v. Seitz, 10 Cir., 193 F.2d 456, certiorari denied 343 U.S. 919, 72 S.Ct. 676, 96 L.Ed. 1332.

The judgment of the trial court is reversed and the cause is remanded with instructions to proceed and enter judgment in accordance with the views herein expressed.

3. These expenditures are:

| Date | Nature of Expenditure | Amount |
|---|---|---|
| | As set forth on Schedule 4 of the Lincoln Kelly account (Exhibit 89) plaintiff, Perry E. Burnham, claims for travel, hotel, meals and wages to himself the sum | $ 2,611.20 |
| 4/15/49 | Expenses and per diem for Earl Burnham in connection with harvesting grain in 1948 | 99.00 |
| | Checks paid by Earl Burnham for personal expenses to Hiawatha Hotel | 6.00 |
| | Shoshone Hotel | 5.00 |
| | Payments by Earl Burnham for certified copies of Judgment, George M. McCoy | 2.50 |
| | and | 4.50 |
| | Additional payment by L. Earl Burnham to J. D. Skeen | 7.50 |
| | and | 55.00 |
| | | $2,790.70 |